# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Briana Dale Jorgensen,

                Plaintiff,

v.

Nancy A. Berryhill,
Acting Commissioner of Social Security,

                Defendant.

**Case No. 16-cv-1025 (JRT/SER)**

**REPORT AND RECOMMENDATION**

---

STEVEN E. RAU, United States Magistrate Judge

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Briana Dale Jorgensen ("Jorgensen") seeks review of the Acting Commissioner of Social Security's (the "Commissioner") denial of her application for disability insurance benefits ("DIB"). *See* (Compl.) [Doc. No. 1 at 1]. The parties filed cross-motions for summary judgment. (Pl.'s Mot. for Summ. J.) [Doc. No. 27]; (Def.'s Mot. for Summ. J.) [Doc. No. 33]. For the reasons stated below, this Court recommends Jorgensen's Motion for Summary Judgment be denied and the Commissioner's Motion for Summary Judgment be granted.

## I.    BACKGROUND

### A.    Procedural History

    Jorgensen protectively filed for DIB on February 24, 2012. (Admin. R.) [Doc. No. 24 at 264]. Jorgensen claimed disability as a result of various cognitive dysfunctions including: a "central auditory processing disorder"; "verbal & non-verbal reasoning and problem solving"; "comprehension & memory problems"; "expressive language disability"; "mathematics disorder"; and unspecified issues related to learning, memory, and anxiety. (*Id.* at 267).

Jorgensen's claim was denied initially and upon reconsideration. (*Id.* at 16, 163–65, 171–73). Following a hearing, an administrative law judge (the "ALJ") denied benefits to Jorgensen. (*Id.* at 30–31). On November 25, 2014, the Appeals Council denied Jorgensen's request for review of the ALJ's decision, rendering that decision final. *See* 20 C.F.R. § 404.984; *Sims v. Apfel*, 530 U.S. 103, 107 (2000); (Admin. R. at 1–3). This lawsuit was initiated on April 19, 2016.[1] (Compl.).

### B.    Factual Background[2]

#### 1.    Jorgensen's Background and Testimony

Jorgensen alleged an onset date ("AOD") of February 6, 2012. (Admin. R. at 264). As of the AOD, Jorgensen was twenty-two years old, making her a younger person. *See* 20 C.F.R. § 404.1563(c); *see also* (Admin. R. at 264). Jorgensen has an associate's degree and worked part-time as a sales associate, cashier, receptionist, and call center agent. (*Id.* at 268–69).

At the hearing, Jorgensen described living at home with her mother. (*Id.* at 62–63). Jorgensen mentioned attempting various chores around the house but being unable to complete assigned tasks because she got "distracted by something else" and then "completely forget" the task she was assigned. (*Id.* at 62). Jorgensen stated that her family needs to continually remind

---

[1]    The Commissioner filed a motion to dismiss Jorgensen's Complaint arguing that the Complaint was untimely. *See* (Mot. to Dismiss) [Doc. No. 10]; (Def.'s Mem. in Supp. of Mot. to Dismiss) [Doc. No. 11]. The Court denied the Commissioner's Motion to Dismiss finding "that the equities lie in favor of tolling the statute of limitations in this instance." *See* (R&R Dated Jan. 9, 2017) [Doc. No. 18 at 11]; (Order Dated Jan. 31, 2017) [Doc. No. 20] (adopting the Report and Recommendation).

[2]    The Court has reviewed the entire administrative record but summarizes only the evidence necessary to provide context for the issues before the Court. In particular, Jorgensen asserts errors related to the manner in which the ALJ evaluated the medical opinions of State agency psychological consultants and David Alter, PhD, LP ("Dr. Alter"). *See* (Pl.'s Mem. in Supp. of Mot. for Summ. J., "Jorgensen's Mem. in Supp.") [Doc. No. 28 at 14–22]. The Court focuses on these determinations in its analysis. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (stating the claimant waived issues not raised before the district court).

her to stay on task, which frustrates them. (*Id.*). Jorgensen also described being able to drive, but relying heavily on a global position system ("GPS") to avoid getting lost. (*Id.* at 63–65). Jorgensen also stated that if she is listening to music or "if someone is talking to [her]," she might get distracted and miss the GPS instructions. (*Id.* at 64). In particular, Jorgensen mentioned that sometimes she will "miss half the turns." (*Id.*). Jorgensen also discussed frustrations related to reading because she gets easily distracted and has to "reread it over and over." (*Id.* at 66). Jorgensen stated that she watches television, although she has a short list of stations she has written down to help her remember the channels of the stations she likes to watch. (*Id.* at 67). Jorgensen also mentioned that she "like[d] being out and about" with friends and that she enjoyed "going to karaoke . . . two or three times a week." (*Id.* at 71).

With respect to Jorgensen's work history, she discussed having been employed on numerous occasions in various capacities. *See, e.g.*, (*id.* at 44–58, 73, 74–77). Jorgensen described difficulties with some of these jobs, although she suggested that she was able to perform well at some jobs despite her alleged impairments. *See* (*id.*). Specifically, she stated she could not get a full-time job at Big Lots, due to the fact that they "only hire part time," and not because her impairments prevented her from working there in a full-time capacity. (*Id.* at 44–45).

### 2.    Relevant Medical Evidence

Jorgensen participated in special education programming in junior high and high school, and was diagnosed with an auditory processing disorder in 2005. (*Id.* at 371, 374, 392). A Staggered Spondaic Word test ("SSW") conducted in 2006 by audiologist Sara Cook MA, CCC-

A, found tolerance fading/memory issues that were manifested through difficulties in "listening while background noise is present" and issues with "short term memory recall."[3] (*Id.* at 381).

In 2011, Jorgensen consulted with neuropsychologist Dr. Alter. *See* (*id.* at 22, 460–70). The results from that evaluation demonstrate Jorgensen suffered from significant challenges in inferential thinking, oral and writing abilities, and taking in new information. (*Id.* at 22, 466). For example, a Wechsler Intelligence Scales (4th ed.) ("WAIS-IV") test placed Jorgensen's verbal reasoning in the 7th percentile, her perceptual reasoning in the 25th percentile, her working memory in the 23rd percentile, her processing speed in the 55th percentile, and her general ability in the 10th percentile.[4] (*Id.* at 462).

Further testing determined that Jorgensen struggled in "read[ing] between the lines," giving her a limited understanding of basic mathematics and an inability to construct a narrative story or argument. (*Id.* at 464). Dr. Alter also administered the Wechsler Individual Achievement Test-Second Edition ("WIAT-II") and Wechsler Individual Achievement Test-Third Edition ("WIAT-III") assessments. (*Id.* at 462). The WIAT-II results placed Jorgensen's written expression in the 2nd percentile, her written word fluency in the 1st quartile, and her oral

---

[3]     SSW is "a test of central auditory pathway integrity in which spondaic words are presented dichotically." *Staggered Spondiac Word Test*, Stedman's Medical Dictionary 908340, Westlaw (database updated Nov. 2014). That is, the SSW involves the "[s]imultaneous presentation of a different sound to each ear," of a spondee, or "bisyllabic word with equivalent stress on each syllable." *Dichotic*, Stedman's Medical Dictionary 246230, Westlaw (database updated Nov. 2014); *Spondee*, Stedman's Medical Dictionary 840220, Westlaw (database updated Nov. 2014).

[4]     The Wechsler Intelligence Scale is an intelligence test that assesses verbal comprehension, perceptual reasoning, working memory, and processing speed as a part of overall intelligence. Gordon E. Taub & Nicholas Benson, *Matters of Consequence: An Empirical Investigation of the WAIS-III and WAIS-IV and Implications for Addressing the Atkins Intelligence Criterion*, 13 J. of Forensic Psychol. Practice 27, 30 (2013). In a 2002 case, the United States Supreme Court said that the third edition of the Wechsler Adult Intelligence Scale ("WAIS-III") was the "standard instrument in the United States for assessing intellectual functioning." *Atkins v. Virginia*, 536 U.S. 304, n.5 (2002). The WAIS-IV represents improvement over the WAIS-III. Taub & Benson, *supra*, at 27, 30–31.

expression in the 6th percentile. [5] (*Id.*). The WIAT-III results placed Jorgensen's math problem solving in the 4th percentile and her numerical operations in the 7th percentile. (*Id.*). As part of his assessment, Dr. Alter completed a medical source statement ("MSS") that included marked limitations in: (1) Jorgensen's ability to remember and carry out detailed instructions; (2) "mak[ing] judgments on simple work-related decisions"; and (3) when interacting with the public, supervisors, and co-workers. (*Id.* at 492–93). Dr. Alter also opined that Jorgensen would have difficulties with living independently because she "needs guidance/oversight to reduce conseq[uences] of [her] decisions." (*Id.* at 493).

Donald Wiger PhD, LP ("Dr. Wiger"), examined Jorgensen on August 7, 2012, and acknowledged Jorgensen's history of auditory processing and language disorders. (*Id.* at 516). Dr. Wiger determined that Jorgensen suffered from some memory issues but noted that Jorgensen "answered questions adequately and in a normal time period," and "did not have difficulty with any of the tasks presented, except in math where she had to use her fingers to multiply." (*Id.* at 518). Dr. Wiger noted that Jorgensen could cook for herself, "dress, bathe, groom, and do a variety of chores. She drives. She has a savings and checking account." (*Id.* at 516). Dr. Wiger found Jorgensen to be pleasant, finding her "cooperative and attentive and . . . interested in the interview." (*Id.* at 516). Dr. Wiger also noted that "[h]er longest job was for a year working for Kohl's. She left to change jobs for more money and hours." (*Id.* at 515). He also stated that Jorgensen presented "no evidence of a thought disorder," rather, "she was coherent, logical, goal-directed, and relevant." (*Id.* at 517). Dr. Wiger concluded that Jorgensen could understand instructions, carry out tasks, act appropriately towards other people, and opined

---

[5]   The WIAT-II and WIAT-III tests "measure[] academic achievement relative to same age peers in the areas of word reading, reading comprehension, numerical operations, math reasoning, spelling, and written expression." *See Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 820 n.3 (8th Cir. 2008).

that she could handle the "stressors of the workplace." (*Id.* at 518). Dr. Wiger also opined that "she understands the function of money and is able to handle funds in her best interest." (*Id.*).

Jorgensen also consulted with Daniel Drubach, MD ("Dr. Drubach"), at the Mayo Clinic beginning on November 21, 2012. (*Id.* at 736, 745). Dr. Drubach stated that Jorgensen was "a very pleasant 23-year-old" and was "alert, cooperative, quite verbal, with no disorders of thought process, thought content, or of perception . . . [her j]udgement and insight appear to be good." (*Id.* at 745, 747). Dr. Drubach diagnosed Jorgensen with "memory complaints," learning disability, and depression. (*Id.* at 747). At the meeting with Dr. Drubach, Jorgensen's mother also reported a brain injury that Jorgensen suffered at eighteen months, when Jorgensen fell two feet and hit her head. (*Id.* at 745). Jorgensen's mother also reported additional traumatic brain injuries in junior high and high school. (*Id.*).

As a precaution related to Jorgensen's mother's stated history of traumatic brain injuries, Dr. Drubach ordered an MRI and neuropsychometric testing for Jorgenson, both returning normal results. (*Id.* at 742, 747). Dr. Drubach referred Jorgensen for additional testing with Joseph Murray, MD, and Mark Liebow, MD, at the Mayo Clinic. (*Id.* 736–741). Jorgensen was subsequently diagnosed with anemia, hypothyroidism, abnormal gluten sensitivities, and a memory disorder. (*Id.* at 741). Dr. Drubach ultimately determined that neuropsychological testing gave no "strong indication of cognitive decline." (*Id.* at 742). Dr. Drubach opined that "the difficulties found in testing in recent days could be related to a long history of a learning disability." (*Id.*).

State Agency psychologist Michael DeSanctis PhD, ABPP, LP ("Dr. DeSanctis"), conducted a review of Jorgensen's medical records on August 22, 2012. (*Id.* at 130–41). Dr. DeSanctis determined that Jorgensen's claims of "alleged functional limitations" were credible

and that she suffered from a "severe mental impairment." (*Id.* at 136). Dr. DeSanctis also found that Jorgensen could not process multi-step instructions. (*Id.*). Additionally, Dr. DeSanctis noted mild difficulties in social functioning, mild restrictions on activities of daily living, and marked difficulties in maintaining concentration, persistence, or pace. (*Id.*). Ultimately, however, Dr. DeSanctis opined that Jorgensen was not disabled. (*Id.* at 141). State agency psychologist James Alsdurf PhD, LP ("Dr. Alsdurf"), concurred with Dr. DeSanctis's conclusion upon reviewing Jorgensen's case at the reconsideration level. (*Id.* at 146–56).

### C.     The ALJ's Decision

On September 13th, 2013, the ALJ issued a decision concluding that Jorgensen was not disabled after conducting a five-step analysis prescribed by 20 C.F.R. § 404.1520(a)–(g). (*Id.* at 18–31).

At step one—while admitting that the record was not clear on this point—the ALJ ultimately concluded that Jorgensen was not earning at a substantial gainful activity level. (*Id.* at 18). At step two, the ALJ considered the following to be serve impairments under the regulations: a "cognitive disorder and a depressive disorder" (*Id.*).

At step three, the ALJ considered Listing 12.02 (organic mental disorders), and 12.04 (affective disorders).[6] (*Id.* at 19–20). The ALJ determined that Jorgensen does not have an impairment or combination of impairments that meet or are medically equivalent to one of the Listings. (*Id.*).

At step four, the ALJ analyzed Jorgensen's RFC. (*Id.* at 19–27). The ALJ found that Jorgensen had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, routine,

---

[6]     The ALJ analyzed Jorgensen under 20 C.F. R. Pt. 404, Subpt. P, App. 1 (Sept. 6, 2013).

repetitive tasks requiring no more than brief and superficial interaction with the public and coworkers. She cannot perform fast-paced production work." (*Id.* at 20). The ALJ noted that when establishing this RFC, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as required by 20 C.F.R. § 404.1529. (*Id.*). Furthermore, the ALJ stated that he considered opinion evidence consistent with the requirements established in 20 C.F.R. § 404.1527. (*Id.*).

In considering Jorgensen's RFC, the ALJ determined that Jorgensen's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 27). The ALJ's conclusion that Jorgensen was not credible was based on the conflicting reports Jorgensen offered to "her various treatment providers and consultative examiners regarding her work history, diagnoses history, treatment history, and daily activities," along with the fact that she was able to find part-time work at Big Lots after the alleged onset of her disability. (*Id.*). The ALJ also noted that Jorgensen "explained that she does not work more because the company only hires part time employees." (*Id.*).

The ALJ also considered the opinions of the multiple psychologists who examined Jorgensen. The ALJ gave the opinion of Dr. Alter little weight, because Dr. Alter's findings were "inconsistent with the claimant's work history, her own testimony that she did not have problems relating to coworkers or supervisors, and her current work activity at Big Lots." (*Id.* at 28). The ALJ also stated that Dr. Alter's "report is not well supported by his own evaluation, particularly his opinions regarding her limits in social functioning." (*Id.*). The ALJ gave more weight to the

opinion of Dr. Wiger. (*Id.*). The ALJ determined that Dr. Wiger's opinions regarding Jorgensen's social skills, comprehension, and ability to work were "well reasoned and well explained" and were otherwise consistent with other medical evidence. (*Id.*).

The ALJ also found the "State agency psychological consultants['] opinions generally consistent with the evidence in the record." (*Id.* at 29). Specifically, the ALJ found the State agency psychological consultants' opinions that Jorgensen be limited to "simple, routine, repetitive tasks requiring no more than brief and superficial interaction with the public or coworkers" to be supported by substantial evidence. (*Id.*). The ALJ also concluded that—based on the record evidence—Jorgensen was incapable of performing "fast-paced production work." (*Id.*).

At step four, the ALJ found that although Jorgensen had worked previously as a sales cashier, sales clerk, and call center clerk, she was unable to perform her past relevant work. (*Id.* at 29). At step five, the ALJ found—consistent with the RFC—that Jorgensen could work in jobs that exist in significant numbers in the national economy including: "Conveyer Tender"; "Office Cleaner"; and "Press Tender" (*Id.* at 30). Thus, the ALJ held that Jorgensen was not disabled. (*Id.* at 30–31).

## II.    DISCUSSION

In general, Jorgensen argues that the ALJ improperly ignored aspects of the State agency consultants' opinions and improperly discounted the opinion of Dr. Alter. *See* (Jorgensen's Mem. in Supp. at 14–22). As it relates to the State agency consultants' opinions, Jorgensen asserts that "[t]he ALJ's use of stock language to 'weigh' opinions to support his conclusions are meaningless without findings of fact." (*Id.* at 15). With respect to the ALJ's decision not to afford Dr. Alter's opinion great weight, Jorgensen asserts that Dr. Alter's opinion is consistent

with Jorgensen's testimony and that the ALJ failed to provide sufficient rationale for his determination, specifically as it relates to the differing opinion of Dr. Wiger. (*Id.* at 16–21). The Court finds these arguments unpersuasive. Because the ALJ's decision is supported by substantial evidence, the Court recommends that Jorgensen's Motion for Summary Judgment be denied and the Commissioner's Motion for Summary Judgment be granted.

### A.     Legal Standard

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by 'substantial evidence in the record as a whole.'" *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (quoting *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002)). The Court's task is not to reweigh the evidence. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). Instead, the Court must "review the record for legal error and . . . ensure that the factual findings are supported by substantial evidence." *Hensley*, 352 F.3d at 355.

The "substantial evidence on the record as a whole" standard does not require a preponderance of the evidence, but rather only "enough so that a reasonable mind could find it adequate to support the decision." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). This Court must "consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Sales v. Apfel*, 188 F.3d 982, 984 (8th Cir. 1999) (alteration in original) (internal quotation marks omitted).

### B.     Analysis

It is Jorgensen's burden to demonstrate that she is disabled. *See Goff v. Barhnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("The burden of persuasion to prove disability and to demonstrate

RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." (internal quotation marks omitted)). Jorgensen has not met this burden. Instead, Jorgensen's arguments are designed to encourage the Court to reweigh the evidence, an invitation that this Court declines. *See Gonzales*, 465 F.3d at 894 (stating that courts "do not reweigh the evidence presented to the ALJ" and must "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence"); *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999) (stating that a court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the court] would have decided the case differently").

The ALJ's determination with respect to Dr. Alter is supported by substantial evidence in the record as a whole. Jorgensen's argument that the ALJ provided an insufficient basis to reject Dr. Alter's opinion is not persuasive. (Jorgensen's Mem. in Supp. at 16–22). The ALJ provided a number of reasons, each supported by substantial evidence, as to why Dr. Alter's opinion was discounted. *See* (Admin. R. at 28). In particular, the ALJ found that Dr. Alter's opinion was inconsistent with Jorgensen's "work history, her own testimony . . . , and her current work activity at Big Lots." (*Id.*). Furthermore, the ALJ found Dr. Alter's opinion to be inconsistent with Dr. Alter's own notes. (*Id.*). There is ample evidence in the record to support the ALJ's conclusion. *See, e.g.*, (*id.* at 43–58, 63, 70–71, 73, 74–77, 288–91, 434, 516–18, 736–47). For example, while Dr. Alter opined that Jorgensen had marked limitation in social functioning, Dr. Alter noted as part of his consultation with Jorgensen that she "was pleasant and friendly with the examiner, often bantering with her and engaging in conversation." (*Id.* at 466). Likewise, Dr. Alter's opinion of marked social limitations is inconsistent with Jorgensen's own testimony

regarding various social interactions. *See* (*id.* at 43, 47, 55–56, 70–71, 291, 434, 516). Furthermore, Dr. Alter's opinion that Jorgensen was incapable of independent living was inconsistent with her own statements she could cook for herself, "dress, bathe, groom, and do a variety of chores." (*Id.* at 288–89, 516). The fact the Jorgensen stated on numerous occasions that she drives and manages her own finances is also inconsistent with Dr. Alter's opinion in this regard. *Compare* (*id.* at 493) (Dr. Alter's MSS), *with, e.g.*, (*id.* at 63, 289–90, 516).

Furthermore, while the ALJ did not make a specific finding in this regard, the Court notes that implicit in the ALJ's determination is that Dr. Alter's opinions are undermined by other evidence in the medical record. *See* (*id.* at 25–29). For example, Dr. Drubach's and Dr. Wiger's opinions are in accord, each differing from that of the opinions of Dr. Alter. *See* (*id.* at 25, 28, 516–18, 736–47). The ALJ can discount the weight of Dr. Alter's opinions for reasons related to inconsistency and the presence of other medical evidence that the ALJ considers to be supported by substantial evidence. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) ("An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." (internal quotation marks omitted)). As a result, the ALJ's determination with respect to the weight afforded to the opinions of Dr. Alter is supported by substantial evidence.

Regarding the State agency psychological consultants, Jorgensen argues that the "ALJ made no findings of fact" regarding the weight he afforded their opinions. (Jorgensen's Mem. in Supp. at 15–16). But Jorgensen's argument takes a narrow view of the ALJ's decision. While it may be true that the particular paragraph Jorgensen references in support of her position may be lacking in support, the decision generally is supported by substantial evidence in the record as a

whole. *See* (Admin. R. at 18–30). Furthermore, notwithstanding Jorgensen's argument to the contrary, it is well-settled that an ALJ's alleged failure to elaborate "does not require reversal" where the "record supports [the ALJ's] overall conclusion." *See Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *see also Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010). Here, the ALJ clearly supported his conclusions throughout his decision, and the Court finds that substantial evidence supports the ALJ's determinations. For example, the ALJ articulated reasons supported by substantial evidence why Jorgensen's daily activities suggest only mild difficulties as a result of her mental impairments, how her objective medical testing suggests moderate difficulties in concentration, persistence, and pace, and how her social interactions with friends and treatment providers suggest only moderate difficulties in social functioning. (Admin. R. at 26–29); *see also* (*id.* at 43–58, 63, 70–71, 73, 74–77, 288–91, 434, 516–18, 736–47).

This led the ALJ to conclude that Jorgensen's "impairments do not appear to prevent her from engaging in work activity." (*Id.* at 27). The manner in which the ALJ came to this conclusion is legally permissible. For example, Jorgensen had a varied work history and was working at Big Lots part time during the period in which she alleges she was disabled. *See* (*id.* at 44–58, 73, 74–77). "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff*, 421 F.3d at 792. Indeed, Jorgensen suggested that she wanted to work more, but that Big Lots did not hire full-time employees. (Admin. R. at 27, 44–45). At other times, she left jobs seeking more money or hours. (*Id.* at 515). In addition to inconsistencies related to Jorgensen's work history and her claims of disability, "[i]t was also not unreasonable for the ALJ to note that [Jorgensen's other] daily activities" were inconsistent with her claims of disability. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). As a result, there is nothing to suggest that the ALJ's findings with respect to the State agency psychological consultants are devoid of

factual support as Jorgensen alleges. *See* (Jorgensen's Mem. in Supp. at 15–16). In light of the ALJ's findings regarding Jorgensen's credibility and the weight afforded to various medical professionals, the Court determines that the "record supports [the ALJ's] overall conclusion" with respect to the State agency psychological consultants specifically, and the ALJ's disability determination generally. *See Karlix*, 457 F.3d at 746. Because this Court concludes that substantial evidence supports the ALJ's determination, Jorgensen's arguments fail. *See Hensley*, 352 F.3d at 355.

Jorgensen also argues the ALJ erred by not adopting the State agency consultants' opinions with respect to marked limitations in concentration, persistence or pace, and this error would necessitate a finding that Jorgensen is disabled. *See* (Jorgensen's Mem. in Supp. at 16). This argument, however, ignores the fact that despite State agency consultants' opinions that Jorgensen suffered from marked limitations—which the ALJ did not ultimately adopt—the State agency consultants nevertheless opined that Jorgensen was not disabled. (Admin. R. at 141, 158). While it is true that the question of disability is ultimately reserved to the ALJ, the Court finds it noteworthy given Jorgensen's argument that the State agency consultants' opinions in this regard were in accord with the ALJ's findings. *See* (*id.* at 30–31, 141, 156); *see also Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007) (stating the disability determination is ultimately "reserved to the Commissioner"). Regardless, Jorgensen's argument fails for another reason. The notion that the ALJ must adopt every aspect of the State agency consultants' opinions is against the weight of authority. *See, e.g.*, *Lacroix v. Barnhart*, 465 F.3d 881, 887–88 (8th Cir. 2006) (stating the ALJ "had no obligation to include" limitations that were not supported by the record); *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996) (stating that ALJ "need include only those impairments that the ALJ finds are substantially supported by the record as a whole" (internal

quotation marks omitted)). Because the ALJ included only those limitations in the opinions of the State agency psychological consultants that are supported by substantial evidence, the ALJ has not—as Jorgensen suggests—committed reversible error. *See Lacroix*, 465 F.3d at 887–88; *Cruze*, 85 F.3d at 1323.

In sum, the ALJ's disability determination is supported by substantial evidence in the record as a whole. This Court recommends that Jorgensen's Motion for Summary Judgment be denied and the Commissioner's Motion for Summary Judgment be granted.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Briana Dale Jorgensen's Motion for Summary Judgment [Doc. No. 27] be **DENIED**;

2.    The Acting Commissioner of Social Security's Motion for Summary Judgment [Doc. No. 33] be **GRANTED**; and

3.    This case be **DISMISSED.**


Dated: January 26, 2018

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14

days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).